T.C. Memo. 2017-80

UNITED STATES TAX COURT

MAE IZZEDIN ASAD, Petitioner, AND SAM AKEL, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SAM AKEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 32401-15, 8943-16.          Filed May 15, 2017.

Mae Izzedin Asad, for herself.

Sam Akel, for himself.

<u>Harry J. Negro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  Ms. Mae Asad and Mr. Sam Akel filed joint federal

income tax returns for the 2008 and 2009 tax years.  Now divorced, they each seek

**[*2]** review of the IRS's denial of their respective claims for relief from joint and several liability for the 2008 and 2009 years.[1] The liabilities from which they seek relief had been determined in an earlier notice of deficiency as follows:

| Type of liability | Tax year | |
| --- | --- | --- |
| | 2008 | 2009 |
| Deficiency | $14,478 | $10,933 |
| Accuracy-related penalty | 2,896 | 2,187 |
| Addition to tax for late tax-return filing | 12 | -0- |

In recognition of a concession by the IRS made shortly before trial, we hold: (1) Asad is relieved of 28% of the 2008 liabilities and 41% of the 2009 liabilities, and (2) Akel is relieved of 72% of the 2008 liabilities and 59% of the 2009 liabilities.

The rest of this opinion discusses the reasons for our holding. No disputed factual matters affect our decision. Therefore we need not determine who has the burden of proof.

---

[1]The respondent is referred to as the IRS. All section references are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times. All dollar amounts are rounded to the nearest dollar.

**[*3]** 1.      Asad's and Akel's willingness at trial to agree to a 50-50 split of joint liabilities for 2008 and 2009 does not justify the Court's entering a decision relieving each of them of 50% of the joint liabilities

Asad and Akel each owned rental properties during 2008 and 2009. In the notice of deficiency, the IRS disallowed the deductions for rental-property losses they claimed on their joint returns for those years. The notice of deficiency was issued in 2013 to both Asad and Akel. Neither filed a petition for redetermination of the deficiency or penalties or additions to tax. In 2014, Asad requested that the IRS relieve her of joint and several liability for 2008 and 2009. In 2015, Akel made his own request for such relief. In 2015, the IRS denied Asad's request. Asad filed a timely petition challenging her denial of relief. That petition was given docket No. 32401-15. In 2016, the IRS denied Akel's request. Akel filed a timely petition challenging his denial of relief. That petition was given docket No. 8943-16. He also intervened in his wife's case, docket No. 32401-15. We consolidated the two cases for trial, briefing, and opinion.[2] Shortly before trial, the IRS conceded that for each year, 2008 and 2009, Asad should be relieved of joint and several liability for the notice-of-deficiency liabilities by a fraction equal to the losses claimed by the couple for Akel's rental property divided by the total

_____

[2]Both Asad and Akel were residents of New Jersey when they filed their respective petitions.

[*4] losses claimed by the couple for their rental properties. These are 28% for 2008 and 41% for 2009. The IRS also conceded that for each year Akel should be relieved of joint and several liability for the notice-of-deficiency liabilities by a fraction equal to the losses claimed by the couple for Asad's rental property divided by the total losses claimed by the couple for their rental properties. These are 72% for 2008 and 59% for 2009.

The IRS's concessions were made in its pretrial memorandum. At the beginning of trial, the IRS reiterated these concessions. Asad and Akel did not contest the IRS's concessions. However, they stated that--as an alternative to the IRS's concessions--they would be willing to settle the cases such that each of them would be liable to the IRS for 50% of each year's notice-of-deficiency liabilities.[3] This 50-50 split was the same percentage used in Asad and Akel's 2013 divorce agreement. In that divorce agreement, Asad and Akel had agreed that each would be liable for 50% of their tax liabilities from prior tax years, including tax years 2008 and 2009. The discussion of the divorce agreement at trial began with Asad proposing: "I would like to possibly see if my ex-spouse, Sam Akel, objects to it

---

[3]They also testified that they hired a professional tax-return preparer to prepare their returns for the 2008 and 2009 years and that they should therefore be relieved from liability for the accuracy-related penalties for those years. We discuss this argument below in part 2.

**[*5]** being 50/50 as we agreed on in the divorce decree." After some discussion, Akel said: "I agree to split it 50/50." Our interpretation of this discussion is that Asad and Akel thought that their willingness--at trial--to agree to a 50-50 split should permit their respective liabilities to the IRS to be reduced by 50%.

The divorce agreement establishes Asad's and Akel's rights against each other under state law. See Rude v. Commissioner, 48 T.C. 165, 174 (1967). It may allow one to recover against the other through a right of contribution. See id. However, it does not control their liabilities to the IRS. In Cooper v. Cooper (In re Cooper), 83 B.R. 544, 545 (Bankr. C.D. Ill. 1988), a separation agreement required the former husband to pay the joint income tax liability for 1983. The court observed that the separation agreement did not affect the former spouses' liabilities to the IRS: "Of course, since the IRS was not a party to the separation agreement and never agreed to look solely to Alva [the husband] to recover the taxes in question, the IRS was not bound by the couple's separation agreement and was free to go after either Alva or Darlene [the wife], or both, for the unpaid taxes." Id. n.1. In Estate of Quirk v. Commissioner, T.C. Memo. 1995-234, 69 T.C.M. (CCH) 2746, 2747 (1995), a 1975 divorce agreement required the former husband to be liable for income tax for the tax year 1974, a year for which he and his former wife had filed a joint return. The former wife's attorney advised her

**[\*6]** that the liability would fall on the former husband. The Court observed that the attorney should have also advised her that she remained jointly and severally liable to the IRS because the divorce agreement was not binding on the IRS. Id. at 2750. The Taxpayer Bill of Rights 2, Pub. L. No. 104-168, sec. 401(2), 110 Stat. at 1459 (1996), required the Department of Treasury and the General Accounting Office to each conduct studies of, among other things, "the effects of providing that, if a divorce decree allocates liability for tax on a joint return filed before the divorce, the Secretary [of the Treasury] may collect such liability only in accordance with the decree". A committee report discussing the Taxpayer Bill of Rights 2 (in proposed form) observed: "In some cases, a couple addresses the responsibility for tax liability as part of their divorce decree. However, these agreements are not binding on the IRS because the IRS was not a party to the divorce proceeding. Thus, if a former spouse violates the tax responsibilities assigned to him or her in a divorce decree, the other spouse may not rely on the decree in dealing with the IRS." H.R. Rept. No. 104-506, at 30 (1996), 1996 U.S.C.C.A.N. 1143, 1153. The resulting report from the Department of the Treasury similarly observed: "Many taxpayers are apparently surprised to learn that under current law their divorce decree's allocation of liabilities is not binding on creditors (including the IRS) who do not participate in the divorce

**[\*7]** proceedings." U.S. Dep't of the Treasury, Report to the Congress on Joint Liability and Innocent Spouse Issues 44 (1998), https://www.treasury.gov/resource-center/tax-policy/Documents/Report-Joint-Liability-Innocent-Spouse-1998.pdf. (The report suggested that binding the IRS to the results of a divorce decree was impractical. Id. at 41-44.) The resulting General Accounting Office report observed: "Divorcing couples may specify in their divorce decrees how future liabilities resulting from their prior joint returns are handled, i.e., one spouse is entirely liable, both spouses are equally liable, or some other permutation. However, IRS is not bound by these divorce decrees because it is not a party to the decree." U.S. Gen. Accounting Office, GAO/GGD-97-34, Information on the Joint and Several Liability Standard 19 (1997), http://www.gao.gov/assets/230/223759.pdf. (The report concluded that binding the IRS to the results of a divorce decree was impractical. Id. at 19-21.)

Because their divorce decree does not alter their liabilities to the IRS, Asad and Akel are jointly and severally liable for their federal income tax liabilities under federal law. See sec. 6013(a), (d)(3); Dolan v. Commissioner, 44 T.C. 420, 427 (1965) (stating that the IRS has the option of proceeding against either spouse who signed a joint return, but can collect the liability only once). Relief from joint and several liability is afforded to joint-return filers under the tests set forth in

[*8] section 6015.  Although Asad and Akel petitioned the Court for relief from joint and several liability under section 6015, at trial neither contended that they satisfied the tests for relief under section 6015.  It is apparent that they both would agree to a 50-50 settlement of these cases.  But the IRS is also a party to these cases.  Without the IRS's consent to a settlement under which Asad and Akel's liability is each reduced to 50%, there can be no enforceable settlement on those terms.  See Corson v. Commissioner, 114 T.C. 354 (2000) (holding that where both spouses filed a petition to redetermine the deficiency and the wife also sought section 6015 relief in the same proceeding and she and the IRS agreed that she was entitled to section 6015 relief, without the husband's signature on the settlement agreement, it cannot form the basis for a judicial decision).  We accept the IRS's concessions, which are not contested by Asad and Akel.

2.    Asad's and Akel's return-preparer defense to the accuracy-related penalties

At trial, the only real issue raised by Asad and Akel was that because a professional tax-return preparer prepared their 2008 and 2009 returns, they should be relieved from liability for the accuracy-related penalties imposed by section 6662.  That penalty does not apply if the tax returns were prepared by a professional tax-return preparer and if certain other conditions are met.  Sec. 6664(c)(1) (there is an exception to the penalty for reasonable cause and good

**[\*9]** faith); sec. 1.6664-4(c), Income Tax Regs. (reasonable cause and good faith may include reasonable reliance in good faith on opinion of professional tax adviser).

The Court is without jurisdiction in these cases to consider Asad's and Akel's return-preparer defense. Neither Asad nor Akel petitioned the Tax Court in response to the IRS's notice of deficiency. See sec. 6213(a) (allowing taxpayer to petition the Tax Court to redetermine a deficiency within 90 days after the mailing of a notice of deficiency). Instead, they petitioned the Court to review the IRS's denial of their respective claims for relief from joint and several liability under section 6015. See sec. 6015(e). In a stand-alone section-6015 case such as this, which is independent of a deficiency proceeding, the Court can consider only whether the relief provisions of section 6015 are available. See Block v. Commissioner, 120 T.C. 62, 68 (2003). The Court cannot consider issues other than section-6015 relief. Id. Thus, it cannot consider Asad's and Akel's tax-return-preparer defense to the accuracy-related penalties.

**[\*10]**  To reflect the foregoing,

<u>Decisions will be entered under Tax</u>

<u>Court Rule of Practice & Procedure</u>

<u>155 reflecting respondent's concessions</u>.